IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY MORGAN, RACHEL DOMBROSKI, and BRIAN HAWKINS, <br><br> Plaintiffs, <br><br> vs. <br><br> SEARS HOLDINGS MANAGEMENT CORPORATION, d/b/a SEARS, <br><br> Defendant. | Case No. 16 C 6871 |

# MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jeffrey Morgan, Rachel Dombroski, and Brian Hawkins filed a collective action against their former employer Sears Holdings Management Corp., alleging that Sears subjected them to discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621. Sears has moved to dismiss the complaint and to compel arbitration.

## Background

### 1. Underlying complaint

After filing charges with the Equal Employment Opportunity Commission (EEOC), Morgan, Dombroski, and Hawkins filed this collective action on June 30, 2016. They contend that they were terminated from their positions at Sears due to their age or their opposition to age discrimination.

Morgan claims that Sears discharged him for opposing what he believed to be

age discrimination. Morgan worked for Sears from April 2013 until he was terminated from his position as market trainer in October 2015. Compl. Ct. 1 ¶ 6. He alleges that Sears retaliated against him for complaining to Sears' human resources department and his immediate supervisor about another manager, Martinez, who made "unlawful and discriminatory age-related comments" about older employees. *Id.* ¶ 3. Morgan contends that soon after making the complaint, "at the behest of Martinez," he was "unfairly criticized, berated, [ ] placed on a performance improvement plan," and eventually fired. *Id.* ¶¶ 3-6.

Dombroski claims that Sears terminated her employment because of her age. Dombroski worked for Sears (and a predecessor entity) from 1977 until May 1, 2015 when she was allegedly forced to resign from her position as assistant manager of operations. Compl. Ct. 2 ¶ 4. She alleges that she was familiar with Martinez's negative comments about older employees and that one day Martinez told her that she was "too old" to work for Sears. *Id.* ¶ 3. Dombroski contends that Sears, through Martinez, forced her to resign because of her age and that Sears immediately replaced her with a "substantially younger" male employee. *Id.* ¶ 4.

Hawkins contends that Sears fired him due to his age and in retaliation for his opposition to discriminatory practices. Compl. Ct. 3 ¶ 4. Hawkins worked for Sears (and a predecessor) from 1978 until February 13, 2016, when he was terminated from his position as store manager. *Id.* Hawkins alleges that his supervisor, Martinez, demanded that he fire employees that Martinez had determined to be "too old" to work at Sears. *Id.* ¶ 3. Hawkins contends that he opposed and refused to meet Martinez's demands because he believed that they violated the ADEA. *Id.* He alleges that he was

terminated as a result.

**2.    Arbitration agreement**

Sometime before filing its motion to compel and dismiss, Sears asked Morgan, Dombroski, and Hawkins to submit their claims in arbitration pursuant to an arbitration agreement that it contends each of them executed. Def.'s Mot. to Compel and Dismiss ¶ 5. The agreement calls for Sears employees to resolve all employment-related disputes, including disputes under the ADEA, in arbitration: "**[T]his Agreement applies, without limitation, to . . . claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, [and] Age Discrimination in Employment Act** . . . ." Def.'s Ex. 1 at Ex. A (Arbitration Agreement) § 1.

The agreement also requires Sears employees to resolve all employment-related disputes on an individual basis. The agreement contains both collective and class action waivers. The collective action waiver provides, in relevant part:

> **4.    Class Action Waiver, Collective Action Waiver, and Representative Action Waiver**
>
> **Associate and Company agree to bring any dispute in arbitration on an individual basis only. Also, this Agreement prohibits Associate and Company from filing, opting into, becoming a class member in, or recovering through a class action, collective action, representative action or similar proceeding in court.**
>
> **Accordingly, if Associate does not opt out of this Agreement as set forth in Section 11 below:**
>
> **. . . .**
>
> **(b)    There will be no right or authority for any dispute to be brought, heard, or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Agreement in any lawsuit in which (1) the complaint is filed as a**

> **collective action and (2) the civil court of competent jurisdiction in which the complaint was filed finds the Collective Action Waiver is unenforceable (and such finding is confirmed by appellate review if review is sought). In such instances, the collective action must be litigated in a civil court of competent jurisdiction and not as a collective arbitration.**

Arbitration Agreement § 4(b).

The arbitration agreement also contains an employee opt-out form. A Sears employee may opt out of the arbitration agreement, including the collective action waiver, by signing the opt-out form on the agreement's last page. The opt-out form states:

> **Arbitration Policy/ Agreement Opt Out Form**
>
> I have reviewed the Arbitration Policy/Agreement, and I elect to opt out of the Arbitration Policy/ Agreement. I understand that there will be no adverse employment action taken against me as a consequence of that decision. I understand that this completed Opt Out Form must be returned within 30 days, as provided in the Arbitration Policy/Agreement. The date of its return will be determined by the date of the postmark on the envelope in which the form is mailed. Alternatively, I may fax the form to the number indicated below, and the date of return will be determined by the date the form is faxed. I will retain a copy of the fax confirmation sheet.
>
> By timely returning this signed and completed Opt Out Form, I understand that the Arbitration Policy/ Agreement will not apply to me or Company.

*Id.* § 11.

### 3.  Court proceedings

After Morgan, Dombroski, and Hawkins filed this lawsuit, Sears moved to compel arbitration of their claims pursuant to the Federal Arbitration Act (FAA). Sears contends that all three plaintiffs signed an arbitration agreement that contained a collective action waiver. In their opposition brief, plaintiffs argue that: 1) Dombroski and Hawkins are not subject to the collective action waiver because they opted out of the arbitration

4

agreement, and 2) the collective action waiver is unenforceable because it violates section 7 of the National Labor Relations Act, 29 U.S.C. § 157. In its reply brief, Sears argues that Morgan, Dombroski, and Hawkins cannot rely on the NLRA to invalidate the collective action waiver because, as supervisory employees, they were not covered by the NLRA. The Court permitted plaintiffs to file a surreply to address this point. In their surreply, plaintiffs concede that they were employed as supervisors and, as such, were not covered by the NLRA. They contend nonetheless that the arbitration agreement is unenforceable against them because the agreement is void due to its contravention of section 7 of the NLRA.

**Discussion**

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA, 9 U.S.C. § 3, requires a court to stay "litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted). Section 4 of the FAA, 9 U.S.C. § 4, requires a court to "compel arbitration in accordance with the terms of the agreement upon the application of either party to the agreement." *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1000 (N.D. Ill. 2013), *aff'd*, 556 F. App'x 543 (7th Cir. 2014) (internal quotation marks omitted).

**A.    Legality**

The FAA's saving clause permits an arbitration agreement to "be invalidated by generally applicable contract defenses." *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1156

5

(7th Cir. 2016), *cert. granted*, No. 16-285, 2017 WL 125664 (U.S. Jan. 13, 2017). "Illegality is a standard contract defense contemplated by the FAA's saving clause." *Id.* at 1159.

Plaintiffs seek to invalidate Sears' collective action waiver on the ground that it violates sections 7 and 8 of the NLRA, which among other things entitle employees to engage in concerted activity and prohibit employers from interfering in such activity. Plaintiffs contend that the Seventh Circuit's decision in *Lewis v. Epic Systems Corp.* stands for the proposition that collective action waivers in arbitration agreements are illegal, period. Plaintiffs further contend that an arbitration agreement containing an illegal clause is void *ab initio* and in its entirety. Pls.' Surreply at 1. Because the arbitration agreement is void *ab initio*, plaintiffs argue, "Sears should be barred from attempting to enforce it regardless of the status of the ex-employees against whom it is attempting to enforce." *Id.* at 2.

The principle guiding plaintiffs' proposed remedy is that the "[e]nforcement of [an] illegal contract makes the court an indirect participant in the wrongful conduct." *Penn Mut. Life Ins. Co. v. Greatbanc Trust Co.*, 887 F. Supp. 2d 822, 830 (N.D. Ill. 2012) (internal quotation marks omitted). Alternatively, Morgan, Dombroski, and Hawkins ask the Court to strike the collective action waiver if it does not invalidate the contract as a whole.

Under Illinois law, when a court finds that a contract is void *ab initio*, it treats the contract "as if it never existed" and does not enforce any rights or obligations contained within the contract. *Alliance Prop. Mgmt., Ltd. v. Forest Villa of Countryside Condo. Ass'n*, 2015 IL App (1st) 150169, ¶ 29, 47 N.E.3d 1142, 1149. And under certain

6

circumstances, when a court finds that a term within a contract is illegal, it will declare the entire contract void *ab initio*. *Wigginton v. Dell, Inc.*, 382 Ill. App. 3d 1189, 1198, 890 N.E.2d 541, 549 (2008) ("If the unenforceable term is an essential part of the contract, the contract is not severable and the entire contract is void."). Plaintiffs are incorrect, however, in asserting that these principles govern here.

A contract is void *ab initio* or illegal under Illinois law only if its subject matter "expressly contravenes the law or a known public policy." *In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 39, 955 N.E.2d 572, 585; *see, e.g.*, *Tomm's Redemption, Inc. v. Park*, 333 Ill. App. 3d 1003, 1008, 777 N.E.2d 522, 527 (2002) (finding a contract void *ab initio* because the subject matter involved dividing up gambling winnings, making it illegal under Illinois law); *Ohio Nat'l Life Assurance Corp. v. Davis*, 13 F. Supp. 3d 876, 883 (N.D. Ill. 2014) (finding an insurance policy void *ab initio* because it was procured without an insurable interest in violation of Illinois public policy).

The subject matter of the arbitration agreement is not the least bit illegal, nor do plaintiffs contend that it is. Specifically, there is nothing illegal about an agreement that requires disputes to be resolved in arbitration rather than in court. Indeed, Congress enacted the FAA with the "express purpose of making valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681-82 (2010).

The collective action waiver may be unenforceable with regard to employees covered by the NLRA, but it is not illegal in all of its applications. The *Lewis* decision does not stand for the proposition that an arbitration agreement containing a collective action waiver is always illegal. Rather, the Seventh Circuit's decision concerned the

7

rights of employees whose employment is subject to the NLRA.  Specifically, the court found a class action waiver contained in an employment-related agreement unenforceable because it interfered with the right of workers to engage in concerted activities guaranteed by section 7 of the NLRA.  *Lewis*, 823 F.3d at 1155.  The court concluded that contracts that "stipulate away employees' Section 7 rights or otherwise require actions unlawful under the NRLA are unenforceable." *Id.*  The court also concluded that "contracts between employers and individual employees that stipulate away Section 7 rights necessarily interfere with employees' exercise of those rights in violation of Section 8." *Id.* (citing *NLRB v. Stone*, 125 F.2d 752, 756 (7th Cir. 1942)).

Plaintiffs, however, are supervisory employees to whom section 7 of the NLRA does not apply.  They have conceded exactly that.  They essentially arguing that because the collective action waiver cannot be enforced by Sears against non-supervisory employees, Sears cannot enforce it against anyone, including supervisory employees like them.  Plaintiffs offer no authority to support this position, and the Court is aware of none.  Plaintiffs' contention is roughly similar to a situation in which a company enters into a series of agreements, some but not all of which are made with minors and are thus unenforceable or at least voidable.  In this scenario, a non-minor could not viably contend that the contract is unenforceable against him as well.  To put it another way, if Sears had agreements of this type *only* with supervisory employees like plaintiffs who are not covered by the NLRA, there would be no question about the agreements' legality or enforceability.  The agreement is in no way illegal as it relates to supervisory employees, and the Court is unpersuaded that plaintiffs can, in essence, assert the rights of other workers who, unlike plaintiffs, are covered by section 7 of the

8

NLRA. The NLRA makes clear that the right to engage in concerted activities as guaranteed by section 7 of the NLRA "shall not include . . . any individual employed as a supervisor." 29 U.S.C. § 152.

The Court therefore overrules plaintiffs' challenge to the enforceability of the agreement based on the NLRA.

**B.     Motion to compel arbitration**

**1.     Agreement to arbitrate**

"[N]o party can be required to arbitrate a claim if [it has] not agreed to do so." *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 806 (7th Cir. 2003). "Whether the parties agreed to arbitrate is a matter of state contract law." *Id.* According to Illinois law, an arbitration agreement is enforceable where there is an offer, acceptance, and consideration. *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 26, 830 N.E.2d 619, 624 (2005). Morgan does not dispute that he agreed to Sears' arbitration agreement, but Dombroski and Hawkins do.

Sears contends that, after reviewing the arbitration agreement and opt out form on Sears' online portal, Hawkins and Dombroski executed the agreement by clicking "Yes" and "Submit" on the agreement's acknowledgement page on April 25, 2012 and April 28, 2012, respectively. Novak Decl. at ¶ 16. Sears also provides screenshots that allegedly show these acknowledgement receipts. Novak Decl., Exs. C-D. Sears contends that this is sufficient to bind Hawkins and Dombroski because they were not required to take any further action regarding the arbitration agreement after they signed it in April 2012. Krysh Decl. ¶ 6.

Dombroski and Hawkins deny that they agreed to Sears' arbitration agreement in

9

2012. Indeed, they argue that doing so would have been impossible because they did not have access to Sears' online portal in April 2012. Pls.' Ex. 1 (Hawkins Aff.) ¶ 4; Pls.' Ex. 2 (Dombroski Aff.) ¶ 4. And although Dombroski and Hawkins admit they executed the arbitration agreement in 2013, they contend that they opted out of the arbitration agreement when it was presented to them again in the fall of 2014. Specifically, they state that they completed the required opt out forms and faxed them to Sears Holding Legal Intake. Hawkins Aff. ¶¶ 5-9; Dombroski Aff. ¶¶ 5-9.

Under the FAA, "[i]f the making of the arbitration agreement . . . [is] issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Given the conflicting evidence regarding whether Dombroski and Hawkins' opted out of the arbitration agreement, an evidentiary hearing is required in order to decide Sears' motion to compel them to submit their claims to arbitration.

### 2. Compelling arbitration (Morgan only)

Under the FAA, "arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Sears has made the necessary showing with regard to Morgan. The Court therefore grants Sears' motion to compel arbitration of Morgan's claim.

Sears seeks dismissal of the claims of any plaintiff who is required to arbitrate. But in this circuit, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (quoting *Cont'l*

*Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n. 7 (7th Cir. 2005)). *See* 9 U.S.C. § 3 (a court shall "on application of one of the parties stay the trial of the action" until arbitration is completed). The Court therefore stays litigation of Morgan's claim but declines to dismiss it.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion to compel arbitration in part [dkt. no. 12]. Specifically, the Court orders plaintiff Morgan's claim (Count 1) to be submitted to arbitration and stays further proceedings on that claim pending arbitration. The case is set for a status hearing on March 13, 2017 at 9:30 a.m. for the purpose of setting a date for trial on the question of whether plaintiffs Dombroski and Hawkins entered into an agreement to arbitrate their claims.

							_____
							MATTHEW F. KENNELLY
							United States District Judge

Date: March 6, 2017